**GULFSTREAM III ASSOCIATES, INC., Gulfstream IV Associates, Inc., Plaintiffs,**

v.

**GULFSTREAM AEROSPACE CORP., a Delaware corporation; Gulfstream Aerospace Corp., a Georgia corporation; Gulfstream American Corp.; Atlantic Aviation Corp.; Cessna Aircraft Co.; Gates Learjet Corp.; British Aerospace, Inc.; Canadair Challenger, Inc.; Mitsubishi Aircraft International, Inc., Defendants.**

Civ. A. No. 88–499.

United States District Court, D. New Jersey.

Feb. 21, 1992.

---

Michael S. Waters, Carpenter, Bennett & Morrissey, Newark, N.J., and Harold E. Kohn, Joanne Zack, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for plaintiffs.

Arthur R. Schmauder, Raymond M. Tierney, Jr., Francis B. Sheehan, Sheila G. Gruber, Shanley & Fisher, Morristown, N.J., for defendant Cessna Aircraft Co.

## OPINION

WOLIN, District Judge.

Before the Court is plaintiff's petition for attorneys fees and expenses pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and Local Rule 46.[1] Plaintiff seeks to recover $4,522,059.54 plus enhancement for delay in payment. For the reasons that follow, the Court will grant plaintiff's petition in the amount of $1,098,216.50.

## BACKGROUND

Plaintiff commenced this action ("the *Gulfstream* action") on June 7, 1985 in the United States District Court for the Central District of California. The complaint, as amended, alleged that Gulfstream Aerospace Corporation (Delaware), Gulfstream Aerospace Corporation (Georgia), Gulf-

---

1. Because summary judgment was entered against Gulfstream IV Associates, Inc. on August 30, 1990, 1990 WL 127124, Gulfstream III Asso-ciates, Inc. is the sole plaintiff entitled to attorneys' fees.

stream American Corporation, Atlantic Aviation Corporation, Cessna Aircraft Company, Gates Learjet Corporation, British Aerospace, Inc., Canadair Challenger, Inc. and Mitsubishi Aircraft International, Inc., all conspired to fix, raise, maintain and/or stabilize the prices of business jet aircraft sold in the United States. Plaintiff alleged that it was injured because it purchased three Gulfstream aircraft at illegally inflated prices.[2] This case was transferred from California to New Jersey on November 25, 1987 on plaintiff's second motion to transfer (an initial transfer motion was denied).

Every defendant except Cessna settled with plaintiff before trial. The claims as to two of the three aircraft were dismissed before trial on motions for summary judgment decided by the Court on August 30, 1990. Plaintiff's claim against Cessna as to the remaining aircraft was tried to a jury in April, 1991. The jury returned a verdict of $997,500 which, when trebled pursuant to 15 U.S.C. § 15, equalled $2,992,500.

By Letter Opinion and Order dated August 23, 1991, the Court reduced the jury verdict to zero as a result of setoffs of settlement payments received by plaintiff from the other defendants. The Court held, however, in that Opinion and in an Opinion dated October 2, 1991, that although plaintiff's verdict had been reduced to no recovery, it was nonetheless entitled to statutory attorneys' fees because its potential recovery at trial exceeded the total amount of settlement payments allocated to the tried claim, and it had established injury at trial.

Related to this action is another action brought by plaintiff against the Falcon Jet Corporation in this District captioned *Gulfstream III Associates, Inc., et al. v. Falcon Jet Corporation, et al.* That case was consolidated with the then pending action of *Alan Rosefielde, et al. v. Falcon Jet Corporation, et al.* The consolidated *Falcon Jet* cases ("the *Falcon Jet* actions") involved the same conspiracy by aircraft manufacturers alleged in the *Gulfstream* action, but did not include Cessna as a defendant. These actions were settled in November, 1988. In the petition before the Court, plaintiff seeks to recover from Cessna for legal fees and expenses incurred in the *Falcon Jet* actions.

A number of law firms provided services to plaintiff in this and the *Falcon Jet* actions. Plaintiff requests a total of $3,020,-212.98 in legal fees, allocated as follows:

| Firm | Gulfstream | Falcon Jet |
|------|-----------|-----------|
| Carpenter, Bennett | $ 23,609.00 | $ 222,414.00 |
| Kohn, Savett | 435,322.92 | 171,276.87 |
| Tuttle & Taylor | 275,756.81 | –0– |
| Lord Day | 249,046.25 | 2,529,864.00 |
| Coudert | –0– | 98,423.28 |
| Hazenberg | 32,500.00 | –0– |
| | $1,016,234.98 | $3,021,798.00 |
| Falcon Jet Setoff [3] | –0– | $1,018,000.00 |
| Subtotals | $1,016,234.98 | $2,003,978.00 |

**2.** The complaint also alleged a count under § 2 of the Clayton Act (conspiracy to monopolize), which was dismissed with prejudice by Judge William Rea in California on motion brought by Cessna and other defendants.

**3.** Plaintiff has conceded that some of the *Falcon Jet* fees should be set off by the $1,272,500 received as part of the *Falcon Jet* settlement and allocated to attorneys fees. Plaintiff has estimated that 80% of the fees incurred in that action were attributable to prosecuting the price-fixing claim. Therefore, it has reduced the amount of *Falcon Jet* fees requested by 80% of the $1.2725 million, or $1.018 million.

Plaintiff requests a total of $1,501,846.56 in expenses associated with legal services, allocated as follows:

| Firm | Gulfstream | Falcon Jet |
|---|---|---|
| Carpenter, Bennett | $ 3,609.48 | $ 14,376.00 |
| Kohn, Savett | 68,752.56 | 54,097.50 |
| Tuttle & Taylor | 59,606.07 | -0- |
| Lord Day | 50,150.50 | 714,019.82 |
| Coudert | -0- | 3,220.30 |
| Hazenberg | 2,773.09 | -0- |
| Plaintiff | 216,344.11 | -0- |
| Subtotals | $401,235.81 | $785,713.62 |
| Richard Barber [4] | $314,897.13 | -0- |

Plaintiff additionally requests that any fees or expenses awarded be enhanced to reflect the lost use of money for fees paid by plaintiff in past years.

## DISCUSSION

■ The award of attorneys fees to a successful plaintiff under the Clayton Act is mandatory. 15 U.S.C. § 15 [5]; *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n. 5, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978). Under the approach used in the Third Circuit, to determine a reasonable attorney fee under a fee-shifting statute, "an initial lodestar amount is determined by multiplying the number of hours reasonably expended by the prevailing attorneys on the successful claims by a reasonable rate." *Northeast Women's Center v. McMonagle*, 889 F.2d 466, 470 (3d Cir. 1989), *cert. denied*, 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790 (1990). Any reduction in the petition must be "based on objections actually raised by the adverse party." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir.1989).

Cessna has raised a number of objections to plaintiff's fee application. The Court will address them separately.

### A. *Falcon Jet Attorneys Fees*

■ Plaintiff claims that it is entitled to recover from Cessna all reasonable fees and expenses resulting from prosecution of the price-fixing claims in the *Falcon Jet* actions. Cessna was not a party to that action. Plaintiff claims entitlement to *Falcon Jet* fees because much of the work performed in that case was helpful to and used in this case. Cessna does not dispute that much of the legal work performed in the *Falcon Jet* actions was useful to plaintiff in this action. It asserts, however, that there is no legal basis for awarding fees in this action incurred by plaintiff in a different action to which the defendant was not a party.

Plaintiff relies on one case to support its position, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). It claims that in *Delaware Valley*, the Supreme Court "held that attorneys fees could be recovered for work performed in a related case." (Plaintiff's Reply Brief in Support of Petition at 5). The Court finds that plaintiff misconstrues *Delaware Valley*, and that it is inapposite to this case.

At issue in *Delaware Valley* was whether fees could be recovered under a federal statute for post-consent decree legal work performed in connection with administrative proceedings. 478 U.S. at 558–59, 106 S.Ct. at 3094–95. In that case, plaintiffs had sued to force the state to comply with its obligations under the Clean Air Act. The consent decree that was ultimately entered into provided "detailed instructions"

---

**4.** Richard Barber was an expert retained by plaintiff in this case whose expenses and services plaintiff seeks to recover in this petition.

**5.** Section 15 provides in relevant part: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

as to how its terms would be accomplished. *Id.* In holding that fees incurred in administrative proceedings to implement the terms of the consent decree were recoverable, the Supreme Court noted that the administrative work was necessary to implement that decree. *Id.* The holding of *Delaware Valley* is simply that fees are recoverable for "measures necessary to enforce the remedy ordered by the District Court." *Id.* That is not the situation in this case. The Court therefore finds that *Delaware Valley* provides no support for plaintiff's position with respect to the *Falcon Jet* fees.

Cessna asserts that *Home Placement Service, Inc. v. Providence Journal Co.*, 739 F.2d 671 (1st Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985) supports its position that fees incurred in pursuing one action may not be recovered in another action, even when the facts are related. In *Home Placement*, plaintiff sought to recover from defendant fees incurred in a factually-related case against the same defendant in which plaintiff had not prevailed. *Id.* at 677. The First Circuit held that fees from the prior case were not recoverable in the subsequent case, even though some of the discovery in that case had been used, by stipulation, in the later action. *Id.* In denying the award of fees, the court noted initially that defendant had won in the prior action. Additionally, the court stated that the adoption of the stipulated record was agreed to for both parties' convenience and economy, and that "defendant would not have agreed to make plaintiff's presentation of its proof easier in this case if it had known that it might have to pay the fees for the losing attorney in the prior case." *Id.* The *Home Placement* court further reasoned that, to the extent an attorney's experience in a prior case helps in the prosecution of a later case, that increased skill may be reflected in an increase in the attorney's hourly rate, but flatly rejected "adding directly on to the fees in one case for time spent in a prior case." *Id.*

Plaintiff attempts to distinguish *Home Placement* on the ground that the plaintiff in that case had lost in the prior action for which it sought fees. The Court finds that, although not exactly on point, *Home Placement* lends support to Cessna's position. The Court does not believe that the outcome of the prior case is critical. It is true that, unlike the defendant in *Home Placement*, Cessna did not prevail in the earlier action. It is also true, however, that unlike the defendant in *Home Placement*, Cessna was not even a party to the prior action.

It strikes the Court as highly unreasonable for plaintiff to seek from Cessna an award for attorneys fees incurred in an action to which Cessna was not even a party. Cessna had no control over the flow of the *Falcon Jet* litigation, no opportunity to ensure that litigation costs were not unnecessarily escalated in that action, and, as non-parties, had no opportunity to avoid any of those fees by settling. Given the absence of any case law supporting plaintiff's position, Cessna could not have been on notice that it might be asked to foot a legal bill of several million dollars incurred by plaintiff in prosecuting an action against other entities.

Additionally, as was pointed out in *Home Placement*, this Court does not believe that Cessna would have agreed to allow any of the record established in the *Falcon Jet* actions to be used in this action had it known that it would be held to account for the attorneys' fees incurred in creating that record. Plaintiff settled the *Falcon Jet* actions for millions of dollars. Attorneys fees for that action should properly have been recovered, if at all, from the settling defendants. Indeed, the settlement agreement expressly provided that over $1.2 million of the settlement proceeds be allocated to attorney fees. In the absence of any judicial precedent allowing attorneys fees to be recovered for services rendered in a previous action to which the defendant was not a party, the Court declines to award such fees. Hence, plaintiff's request for attorneys fees and expenses in the *Falcon Jet* actions, totaling $2,789,691.62, will be denied.

### B. *Gulfstream Attorneys Fees*

Cessna raises a number of separate issues with respect to plaintiff's petition for

attorneys fees incurred in prosecuting this action.

### 1. Plaintiff's Failure to Separate Entries

Cessna argues that, if the Court rejects plaintiff's request for *Falcon Jet* fees, plaintiff's failure to maintain separate entries for some work performed on the *Falcon Jet* and *Gulfstream* actions warrants rejection of all such fees.

■ Kohn, Savett, Klein & Graf ("Kohn Savett") billed all time devoted to *Falcon Jet* and this action to the same billing number. *Falcon Jet* was settled in November, 1988, and little work was performed in connection with that case after that time. Plaintiff has made what the Court finds to be reasonable adjustments to the hours billed and expenses charged, conservatively subtracting hours that were probably not devoted to this action. See Zack Declaration ¶¶ 13–25. Therefore, as to Kohn Savett fees, the Court rejects Cessna's argument.

■ Cessna additionally argues that Lord Day's policy of billing to *Falcon Jet* all work devoted to legal and factual questions common to both the *Falcon Jet* actions and this case makes impossible a review of those fees to determine their reasonableness. Cessna, however, will not be prejudiced by the practice. Because the Court will not award fees for *Falcon Jet*, Lord Day's failure to allocate hours between the two cases for common issues will merely result in less of a recovery for plaintiff in this application.

### 2. Lord Day Fees in Excess of Contractual Obligation

■ Under the fee arrangement entered into between plaintiff and the New York law firm of Lord, Day & Lord ("Lord Day"),

> plaintiffs would pay attorneys' fees monthly at rates equal to one-half of Lord Day's regular hourly billing rates, ... the other half of the fees would be deferred until the conclusion of the case, and ... Lord Day would also receive 10%

of any settlements or judgments in the case.

(Chapnick Certification at ¶ 6). Plaintiff seeks to recover $249,046.25 for services rendered in this action by Lord Day. This figure is based on Lord Day's regular billing rates. Under the original fee agreement, plaintiff would have been liable for this sum. Plaintiff, however, renegotiated the fee agreement when it was forced to find new counsel in the middle of the litigation because of a conflict of interest caused by the defection of Lord Day's antitrust department to a law firm that represented one of the *Falcon Jet* defendants. As part of a compromise, in recognition of the reduced value of Lord Day's services due its inability to proceed further in the case, "Lord Day agreed to accept a lump sum payment in satisfaction of all amounts owed, and to waive its entitlement to the 10% contingency fee." (Chapnick Certification ¶ 6). Of the lump sum, only $129,385.62 is attributable to this action. (Chapnick Certification ¶ 6). Plaintiff nevertheless seeks to recover the full amount originally billed because it contends that the full billing represents the "reasonable" value of Lord Day's services.

Cessna objects on the ground that the compromise is conclusive evidence of the "reasonable" value of the services, and that to award the full amount would result in a great windfall to plaintiff, who would keep the excess. The Court agrees.

In support of its position, plaintiff relies on *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). *Blum* held that in civil rights actions, attorney fees awarded to successful plaintiffs under 42 U.S.C. § 1988 are to be "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Id.* at 895, 104 S.Ct. at 1547. Thus, plaintiff argues that despite its express agreement with Lord Day to pay only $129,385.62 dollars for services provided, it is entitled to recover the original billed amount for those services. Although plaintiff has cited to circuit court authority in which prevailing plaintiffs have been awarded an amount of attorneys

fees in excess of a contractually agreed amount, *see e.g., Tic–X–Press, Inc. v. Omni Promotions Company of Georgia,* 815 F.2d 1407 (11th Cir.1987), the Court finds none of these precedents persuasive.

All of the cases cited by plaintiff involved either a contingency fee arrangement or legal services provided by public interest lawyers whose billing rate was below the prevailing market rates. At issue in those cases was whether plaintiffs' counsel were limited to a recovery based on (1) the contingency percentage when the plaintiff had obtained only a small damages verdict; or (2) the public interest lawyers' below-market billing rates. Those circumstances are not present here.

Had plaintiff's payment of fees to Lord Day been entirely contingent on the recovery obtained, Lord Day would no doubt have been entitled to more than a percentage of the $0 damages recovered in this action. Plaintiff's renegotiated fee arrangement with Lord Day, however, was not contingent on recovery. In full arms-length negotiations, plaintiff and Lord Day agreed that the reasonable value of Lord Day's services was $129,385.62. That is all that plaintiff was obligated to pay Lord Day. Plaintiff also cannot argue that Lord Day's work was public service or nonprofit-oriented. This was a business deal negotiated by savvy businessmen on both sides of the bargaining table.

To award plaintiff any more than it was obligated to pay Lord Day would create a windfall for plaintiff. *See Tic–X–Press, Inc.,* 815 F.2d at 1423 (fee award greater than contractual amount awarded only because plaintiff "has agreed that it will not keep any portion of the court's attorney's fees award, [and] there is no risk of a windfall to the plaintiff"). The antitrust laws already provide sufficient incentive for the prosecution of antitrust claims by providing treble damage awards, and reasonable attorney fees so that the treble damage award is not diminished by legal costs. The allowance of recovery of attorneys' fees is intended to ensure plaintiffs have the ability to procure competent counsel and to protect damage awards, not to provide a bonanza to plaintiffs.

In this case, the fee agreement between plaintiff and Lord Day was renegotiated because, through no fault of plaintiff, Lord Day could no longer proceed with its representation. Clearly, having to obtain new counsel years into the case was a hardship to plaintiff that reduced the value of any services Lord Day provided to that date. This hardship was recognized by Lord Day and plaintiff, and was accounted for through an arms-length renegotiation of Lord Day's bills.

■ When a strictly commercial, arms-length, non-contingent fee agreement underlies a petition for attorneys fees, this Court will award to a successful plaintiff no more for attorneys fees than that plaintiff is obligated to pay. The negotiated fee agreement is highly probative of the reasonable value of the services provided. Absent proof that the agreed-to amount is not reasonable, it is the best indicator of the market value of the services provided. *Cf. Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11 ("determining an appropriate 'market rate' for the services of a lawyer is inherently difficult. Market prices of commodities and most services are determined by supply and demand.... [In the marketplace T]he fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses."). Accordingly, that part of the petition seeking fees for services provided to plaintiff by Lord Day will be granted only to the extent of the contractual amount, or $129,385.62, and will be denied to the extent of $119,660.63.

3. Unnecessary Expenses Due to Use of New York Counsel

■ Cessna argues that "[b]ecause plaintiff could have been adequately represented by New Jersey counsel, Cessna should not be required to pay for (i) traveling time from New York to Court or (ii) expenses unique to New York practice, *e.g.,* car service for attorneys and staff during evenings and weekends and routine din-

ners." (Cessna's Brief in Opposition to Fee Petition at 28).

As to the first category of expenses, plaintiff has pointed out that the cost of traveling from New York City to Newark, New Jersey is no greater than would result if plaintiff's retained counsel were located in many places in New Jersey. Surely Cessna does not argue that plaintiff was required to retain Newark counsel or forfeit travel costs to court.

■ With respect to the second category, the Court believes that a downward adjustment of expenses is justified. Because Lord Day is the only New York firm for which plaintiff seeks expenses, only their expenses have been placed in issue by Cessna. Plaintiff seeks $50,150.50 in expenses related to Lord Day's services. The Court finds that a 10% reduction in these expenses is adequate to adjust for the increased costs associated with use of a New York firm whose services were neither unique nor otherwise necessary as compared with less costly New Jersey or Pennsylvania counsel. Hence, plaintiff's request for Lord Day expenses will be reduced by $5015.05.

### 4. Reduction of Fees Due to Poor Result Obtained

Cessna asserts that the total fees allowed should be reduced to account for the poor result obtained in this case. It claims that because plaintiff recovered no damages, it is not entitled to a full attorneys fee award.

Under *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), a successful antitrust plaintiff is entitled to only a single recovery, *id.* at 348, 91 S.Ct. at 811. This long-established rule entitles a defendant to reduce the amount of any judgment against him by the amount of settlements between plaintiff and other defendants to the extent that the settlements and judgment represent identical damages.

■ Because plaintiff had received more than four million dollars in settlement payments before trial, this Court reduced to zero the trebled jury verdict of just less than three million dollars. As the single recovery rule is well-settled, plaintiff was or should have been aware prior to trial that its potential recovery would be much less than the amount sought in the complaint. Therefore, going into the trial, plaintiff could have expected that any judgment would have been subject to reduction by setoff of the settlement payments. Thus, the actual judgment of zero dollars, and not, as plaintiff suggests, the trebled jury verdict of $2,992,500, is the more accurate measure of plaintiff's success.

■ Plaintiff also argues that the sums received in settlement with the other defendants are to be considered in measuring its "success". Those sums are not relevant in evaluating the degree of success obtained by plaintiff *against Cessna.* Although plaintiff procured millions of dollars in settlement from the other defendants, Cessna is not liable for litigation costs expended pursuing those claims, nor are settlements considered "successes" for purposes of awarding fees. *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1214 (3d Cir.1978) ("We do not believe that a defendant may be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle.... To require such compensation would be to allow a fee to a plaintiff for hours expended in an unsuccessful attempt to establish liability"). Thus, although Cessna may be held to account for attorney fees incurred pursuing claims against the settling defendants if the legal work also supported the claims against Cessna, *id.* at 1215, success must still be measured only by the recovery actually obtained from Cessna.

> The Supreme Court has stated that
> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

*Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983). It noted that in fixing the reasonable attorney fee, "the most critical factor is the degree of success

obtained." *Id.* Accordingly, it held that when only limited success is obtained, the district court "may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. at 1941. Based on *Hensley,* circuit courts have affirmed attorneys fees awards where the district court reduced the amount requested by a percentage to account for limited success. *See e.g., United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990) (affirmed 20% reduction in attorney fee award in antitrust action to account for recovery of only nominal damages).

■ In this action, the Court held that plaintiff was entitled to attorneys fees despite that it obtained no recovery. Nevertheless, the Court noted in its decision of August 23, 1991 that this limited success might result in a reduction in fees allowed. Opinion at 18. The Court believes that such a reduction is warranted in this case. First, plaintiff has not attempted to make any reduction in the fees requested to account for the dismissal before trial of the monopolization claim brought by plaintiff, nor for the price-fixing claims for the two aircraft that were also dismissed pre-trial. To the extent any legal resources were expended on those claims, plaintiff was completely unsuccessful. Second, for the one price-fixing claim that was tried, plaintiff obtained no affirmative recovery.

To fix an appropriate negative multiplier, the Court does not have available to it any precise formula. Given the many variables that could be considered, and the lack of sufficiently detailed information available to the Court, it is not possible to fix an appropriate negative multiplier by mere arithmetical computation. Instead, the Court must exercise its sound judgment to determine what is fair and reasonable under the circumstances of this case. The Court has considered, based on its experience in this case, all aspects of the history of this litigation, including the procedural history, discovery, motion practice, trial, settlements, the result obtained, and other factors both tangible and intangible that have contributed to the Court's overall perception of what

is reasonable. On this basis, the Court believes that a negative multiplier of .75, which represents a downward adjustment of 25%, should be applied to the fees allowed by the Court, in order that the fees awarded will bear some relation to the success achieved.

### 5. Fees for Education of Counsel and Other Excesses

■ Cessna argues that "time spent by Kohn Savett attorneys getting up to speed in the two cases after the change in law firms should ... be deducted." (Cessna's Brief in Opposition at 31). Cessna also contends that some of the legal services provided by Lord Day, such as a paralegal billing time to clean a file room, should not be allowed.

In renegotiating their fee arrangement after a conflict arose, plaintiff and Lord Day implicitly took into account that plaintiff's new counsel would need to expend some time familiarizing itself with the record created to that point in this case. That accounts in part for the significant reduction in the amount of fees. Because Kohn Savett's "education time" is reflected in the reduction of the Lord Day fees, the Court does not believe that a further reduction is necessary.

The Court also believes that, as part of the significant renegotiation between Lord Day and plaintiff, the reduction in fees due and owing to Lord Day from plaintiff took into account any inefficiencies or overbilling that occurred. Again, the Court does not believe that any further reduction in fees for the services of Lord Day is merited.

### 6. Expert Fees in Excess of Statutory Allowance

Plaintiff requests $314,897.13 in fees and expenses charged to it for services rendered by Richard J. Barber Associates in this case and in the *Falcon Jet* actions. Cessna argues that with respect to plaintiff's experts, under the authority of *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385

(1987) and *West Virginia University Hospitals, Inc. v. Casey,* — U.S. —, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), plaintiff may only recover the $40 per day witness fee prescribed by 28 U.S.C. § 1821 for in-court and deposition appearances. Plaintiff argues that the holding of *Crawford Fitting* is limited to Federal Rule of Civil Procedure 54(d), and that *West Virginia Hospitals* pertains only to requests for attorneys fees pursuant to 42 U.S.C. § 1988, and that neither applies to "costs" sought under 15 U.S.C. § 15, which plaintiff argues has broader meaning. The Court disagrees.

In *Crawford Fitting,* the Court unequivocally stated: "We ... hold that when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or *explicit* statutory authority to the contrary." *Crawford Fitting,* 482 U.S. at 439, 107 S.Ct. at 2496 (emphasis added). The Supreme Court held in *West Virginia Hospitals* that Congress did not intend by the phrase "a reasonable attorney's fee as part of the costs" in 42 U.S.C. § 1988 to shift fees for expert witnesses to the losing party. 111 S.Ct. at 1148. It noted that Congress had explicitly shifted expert's fees in a number of statutes when it had intended to do so,[6] *id.* at 1141–42, and rejected the argument that courts should try to predict what Congress would do if presently confronted with the issue, *id.* at 1147–48. In light of Congress's established practice, the Court believed it inappropriate to construe fee-shifting statutes that are silent on the point as providing for such expert fee-shifting. *Id.* at 1147 ("Congress could easily have shifted 'attorney's fees and expert witness fees,' or 'reasonable litigation expenses,' as it did in contemporaneous statutes; it chose instead to enact more restrictive language, and we are bound by that restriction").

■■■ These broad pronouncements convince the Court that in antitrust litigation, costs of suit recoverable under 15 U.S.C.

§ 15 are defined by 28 U.S.C. §§ 1821 and 1920. As the Supreme Court noted, Congress has in the past explicitly provided for expert witness fees in fee-shifting statutes when it has intended that they be recovered. It has not done so in 15 U.S.C. § 15. Although expert witnesses may be essential to the successful prosecution of an antitrust action, in the absence of an express provision allowing recovery of those witnesses fees and expenses, they are not recoverable. Accordingly, with respect to expert witnesses, plaintiff is limited to the recovery of $40 per day and travel expense as provided for in § 1821.

■■■ Plaintiff's argument that "cost of suit" in 15 U.S.C. § 15 has broader meaning than it does under other statutes is similarly misguided. In *West Virginia Hospitals,* the Supreme Court rejected as "counter-intuitive" and without support the notion that "costs" in fee-shifting statutes should be given a meaning broader than is defined in the cost statutes that apply to ordinary litigation. 111 S.Ct. at 1141 n. 3.

■■■ Cessna further argues that even the fees allowed under § 1821 should be denied in this case because plaintiff has failed to identify the days that its experts appeared as witnesses. The Court agrees that these costs should not be awarded at this time. Not, however, because plaintiff has failed to identify properly those costs, but because plaintiff has not in this petition sought to have costs taxed to the judgment. Should plaintiff seek to recover the $40 per day witness fees, they should be included in a bill of costs filed with the Clerk of the Court pursuant to Local Rule 23.

Cessna also argues that plaintiff may not recover fees for other experts and those persons who assisted the experts in the preparation of reports. (Cessna's Brief in Opposition at 35–37). Because all of the fees Cessna objects to were charged to the *Falcon Jet* actions, they have already been disallowed.

---

**6.** Indeed, in response to the Supreme Court's decision, Congress amended § 1988 to expressly provide for the recovery of expert fees in the Civil Rights Act of 1991.

### 7. Attorneys Fees for Legal Work Related to Experts Not Used in This Case

■ Cessna asserts, without the support of any case law authority, that plaintiff may not recover legal fees for work performed in connection with experts retained but not used at trial. Cessna assumes that any expert retained by plaintiff but not used at trial was not helpful to the prosecution of plaintiff's case. Experts are frequently retained to assist attorneys in the preparation of their case, without any their being used as witnesses at trial. Therefore, Cessna's premise that non-testifying experts were either unfavorable to plaintiff or otherwise not useful is fallacious. Moreover, even if Cessna's premise were true, that would not make any attorney time spent working with those experts "unreasonable" and therefore not compensable. Finding the weaknesses in one's case is often as important as finding the strengths. As long as plaintiff's attorneys acted reasonably in working with experts—that is, their work was not excessive, redundant or inefficient—those hours are compensable.

Cessna had the benefit of full discovery into the basis of plaintiff's fee petition. It has presented nothing that persuades the Court that plaintiff's attorneys billed an unreasonable amount of time for work devoted to experts not used at trial. Therefore, Cessna's objection is without basis and is rejected.

### 8. Services of Mr. Rosefielde

■ Plaintiff seeks to recover $115,-173.25 in fees and $32,155.22 in expenses for the services provided to plaintiff by Alan Rosefielde in negotiating settlements with the other defendants, and for various other activities related to those settlements. Rosefielde, admitted to the New York bar, is president of the plaintiff corporations, and one of two directors of those corporations. His "services" were provided through another corporation, Plumrose, Inc., of which he is sole shareholder.

Cessna argues that these fees and expenses are not compensable. The Court agrees. Rosefielde's services are not recoverable because they were not performed in furtherance of plaintiff's pursuit of a claim against Cessna.

In his declaration, Rosefielde admits that the $115,173.25 represents time devoted to settlement of the claims against other defendants. (Rosefielde Declaration ¶ 3). Similarly, he admits that the expenses requested were incurred in connection with settlements with other defendants. (Rosefielde Supplemental Declaration ¶ 2). It is clear in this Circuit that a defendant may not "be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle." *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir.1978). Rosefielde's services cannot be characterized as anything other time devoted to the claims against the settling defendants. That Cessna may have indirectly benefitted from the settlements through reduction of the jury verdict is irrelevant. Unless services devoted to settling defendants also assist the *plaintiff* in its case against the non-settling defendant, they are not compensable. *Id.* at 1215. There is no evidence in the record, nor has plaintiff argued, that the settlements helped plaintiff in its case against Cessna. Therefore, the fees and expenses sought for the services of Rosefielde will be denied.

### 9. The Hazenberg Fees

■ Plaintiff seeks compensation of $32,500 in fees and $2,773.09 in expenses in connection with the legal services of Hein Hazenberg, Esq. Cessna objects that Hazenberg's records are completely inadequate and vague, and therefore argues that his fees and expenses should be denied in their entirety.

Hazenberg's records are problematic. His services were provided for depositions taken in the *Falcon Jet* actions and in this action. Additionally, he performed work in connection with settlements with two defendants. Fees for work performed in the *Falcon Jet* actions are not recoverable. Also, as discussed in subheading 8 above, neither are fees incurred in connection with

settlements with defendants other than Cessna.

The fees related to settlements are sufficiently identified such that they can be eliminated from the fee award. Hazenberg's invoices dated January 31, 1987 and March 3, 1987, totalling $10,000, state that they relate exclusively to settlements.

As to the charges for depositions, the records and declaration submitted to the Court are insufficient to allow the Court determine how much of the work was expended on this case and not the *Falcon Jet* case. Hazenberg identifies ten individuals whose depositions he attended, and also identifies that seven of the ten depositions were performed in connection with the *Falcon Jet* actions. Because it is clear that Hazenberg performed some work in this action, the Court believes some compensation is proper. Although it is an imprecise method, the Court can think of no more accurate method to allocate Hazenberg's services other than to assume that equal time was devoted to each of the ten depositions, and apply a slight discount out of caution. Therefore, as to the $22,500 devoted to depositions, the Court will allow only 25%, or $5625, to be recovered. Expenses will similarly be reduced to $693.27.

### 10. Tuttle & Taylor Fees

■ Cessna argues that plaintiff's choice of a California venue for this action was inappropriate, and resulted in the unnecessary hiring of Tuttle & Taylor as local counsel. It therefore contends that Tuttle & Taylor's fees should be rejected in their entirety. The Court disagrees. Tuttle & Taylor at times served as lead counsel in this action, and sometimes as local counsel. The Court is not aware of any *per se* rule against recovery of fees incurred by local counsel, and Cessna has not brought pertinent authority for its position to the Court's attention.

To the extent Tuttle & Taylor's services furthered the prosecution of this case, they are recoverable. The Court has reviewed the invoices of Tuttle & Taylor submitted by plaintiff as exhibits to the Declaration of Mario Mak of Tuttle & Taylor. From those invoices it is apparent that Tuttle & Taylor was actively involved in discovery and motion practice in this action. Cessna had a full opportunity to take discovery with respect to Tuttle & Taylor's fees. It has not presented the Court with any evidence that indicates the unreasonableness of Tuttle & Taylor's fees.

### 11. Fees Related to Transfer and Consolidation Motions

■ During litigation of this case, plaintiff filed two motions in California to transfer venue of this action to New Jersey, the second of which was granted, and also filed motions to consolidate this action with the *Falcon Jet* actions, which were denied. Cessna argues that because plaintiff chose to file this action in California, and chose to file it as a separate action instead of together with the *Falcon Jet* actions, Cessna should not be required to pay for any legal fees incurred in connection with those motions. Because those motions could have been avoided had plaintiff more carefully planned the filing of its actions, the Court finds that the transfer and consolidation motions were unnecessary, and that the fees related to those motions are unreasonable and not compensable.

■ Additionally, Cessna claims that attorney time expended researching California and Ninth Circuit law should also be excluded from the attorneys fee award because plaintiff's success in obtaining a transfer of the action it filed in California to New Jersey rendered that research superfluous. Thus, Cessna claims it should not have to pay for that research made unnecessary by plaintiff's own decision to transfer the case out of the Circuit it initially chose. The Court agrees.

Cessna contends that deductions should be made from plaintiff's application for fees (a) connected with researching California and ninth circuit law; (b) related to transfer of venue motions filed in California; (c) associated with transfer of venue motions filed in New Jersey; and (d) associated with consolidation motions.

### a. Research of California and Ninth Circuit Law

With the exception of the 2.5 hour entry attributed to attorney Sarkar on November 6, 1985, all fees identified by Cessna in Exhibit L to the Gruber Declaration as related to research of California and ninth circuit law were billed to the *Falcon Jet* case, and have already been disallowed. The 2.5 hour charge is a "mixed-entry" that includes, in addition to the disallowed research, other items of work. Although there is no prohibition on mixed entry attorney billing records, *see Rode v. Dellarciprete*, 892 F.2d 1177, 1191 (3d Cir.1990), when the mixed entry contains items that are not recoverable, the burden is on the plaintiff to identify which portion of the entry is for compensable work. Because plaintiff has not satisfied its burden to identify the compensable portion of the 2.5 hour mixed entry, it will be disallowed in its entirety. Hence, $200 will be deducted from the application.

### b. Transfer Motions Brought in California

Cessna has identified in Exhibit M to the Gruber Declaration 336.25 hours of charges by Lord Day totalling $45,252.50, for work performed in connection with the transfer of venue motions filed in California in this case. Of the 336.25 hours, 177.5 hours are comprised of mixed entries including work other than on the transfer motions. For the reasons stated above, each entry will be deducted from the award in its entirety, because plaintiff has not even attempted, after being put on notice of the issue by Cessna's opposition to the application, to meet its burden to identify which portion of the mixed entry represents compensable work.

### c. Transfer Motions Brought in New Jersey

Cessna has identified in Exhibit N to the Gruber Declaration legal fees representing work associated with transfer motions brought in the *Falcon Jet* actions in New Jersey. Because all *Falcon Jet* fees have been disallowed, no further reduction is needed.

### d. Consolidation Efforts

Cessna has identified in Exhibit O to the Gruber Declaration a large number of hours charged to plaintiff by Lord Day for work related to consolidation of the *Falcon Jet* actions with this action. Because all of those hours were charged to *Falcon Jet* and have already been disallowed, no further reduction is needed.

Cessna has also identified in Exhibit O to the Gruber Declaration a number of hours charged to plaintiff by Kohn Savett for work related to consolidation of the *Falcon Jet* actions with this action. The Court is satisfied that plaintiff has in good faith estimated and separated the charges to *Falcon Jet* and this action. Thus, the Court is satisfied that of the hours identified by Cessna, those hours charged in March and April 1988, contemporaneous with the pending motion for consolidation in the *Falcon Jet* actions, have already been disallowed.

With respect to the hours charged by Kohn Savett in July, September and October 1987, it is not clear to which case they were assigned. The Court notes that, on motions to transfer venue in both this action and the *Falcon Jet* actions in November and December 1987, arguments were advanced based on the need to consolidate the actions. Therefore, the hours related to consolidation just months prior could have been charged to either case. Because plaintiff bears the burden to establish that fees requested are compensable, and plaintiff has not done so for these charges, the Court will disallow those $2050 of charges.

### 12. Adjustment for Delay in Payment

Plaintiff asserts that it is entitled to an enhancement of the fees and expenses allowed to account for the delay in receiving payment for those costs, and the consequent loss of the use of money expended on those costs from the date of payment by plaintiff to the date of the fee award. The Third Circuit has recognized that such enhancements may be awarded in

the district court's discretion. *Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1453–54 (3d Cir.1988) (Clean Water Act); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 922–23 (3d Cir. 1985) (Civil Rights Act).; *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 588 (3d Cir.1984) (Clayton Act action involving common fund).

Plaintiff has submitted extensive data detailing the dates on which it paid its counsel for work performed in this case. (See Zack Supplemental Declaration). It additionally has submitted data on market rates of interest during the relevant time period and appropriate factors to determine the current value of the money expended on fees. (See Declaration of Jonathan Cunitz). It further has established that plaintiff paid its attorneys fees by borrowing funds at the prime rate plus ½%. (See Rosefielde Additional Declaration). The Court believes that an adjustment is necessary to compensate plaintiff for the lost use of money incurred as a result of paying for the costs of this litigation.

Cessna's arguments in opposition to this request can be boiled down to the assertion that because plaintiff had no obligation to pay its attorneys interest for outstanding sums due, plaintiff should have refused to pay its counsel any sums until fees were awarded. The Court finds this position unreasonable, and wonders whether Cessna's counsel would encourage this kind of behavior in its own clients.

Calculation of an enhancement for delay in payment is no easy task for the Court, given the many reductions already made in the application, and the number of law firms and bills involved. Nevertheless, the Court believes that it can determine an appropriate delay enhancement.

■■■■■ The appropriate rate of interest is the prime rate plus ½%, as that is the actual rate of interest paid by plaintiff to borrow funds to pay its counsel. The Court has reviewed the schedule of pay-

ments prepared by plaintiff and finds that payments were more frequently made in the second half of any given year. Therefore, although for purposes of calculating accumulated interest the Court will utilize the table as Exhibit C to the Cunitz Declaration (which the Court finds to be accurate and to which Cessna has not objected), which assumes that all payments were made at mid-year, the Court will adjust the total interest downward by 5% to reflect that on balance payments were more often made in the second half of the year. Also, because plaintiff has failed to segregate attorney fees from expenses in its schedule of payments made, the Court will assume, when applying the .75 negative multiplier discussed in subheading 4, that all payments were made for attorney fees.

For the year 1985, plaintiff paid Lord Day $22,658.78. Multiplied by the .75 negative multiplier, this sum is reduced to $16,994.09. Multiplied by an interest factor of 1.8339, this figure increases to $31,165.45, which results in a delay enhancement of $14,171.36.

For the year 1986, plaintiff paid Lord Day $144,835.17. This sum must be reduced to reflect the disallowed 2.5 hours of attorney Sarkar for research on ninth circuit law charged in November, 1985, and the disallowed 336.25 hours charged from September 1985 to March 1986 for work related to transfer of venue motions. A further reduction of $5015.05 will be made to account for the reduction in New York expenses made by the Court.[7] Thus, the Lord Day payments will be reduced by $50,467.55 to $94,367.62. Also paid in 1986 were $7,410.19 for third party bills to various law firms (see Rosefielde Declaration ¶ 4), $690.00 to Carpenter Bennett, $64,944.03 to Tuttle & Taylor, and $6,310.30 to Hein Hazenberg. As to the Hazenberg fees, the Court will assume that all of the $6,318.27 allowed was paid not in 1986, but in 1987. The total of paid attorneys fees allowed for 1986 is therefore $167,411.84. When multiplied by the .75 negative multi-

---

7. Although expenses were incurred in years other than 1986, payments to Lord Day were much greater in 1986 than in any other year, so for convenience, the Court will deduct the entire $5015.05 from the 1986 payments.

plier, this figure equals $125,558.88. Multiplied by an interest factor of 1.6723, this figure increases to $209,972.11, which results in a delay enhancement of $84,413.23.

For the year 1987, plaintiff paid Lord Day $21,104.07, third party bills to various law firms of $13,554.57, Carpenter Bennett $32.78, Tuttle & Taylor $103,413.53, and Hein Hazenberg $28,962.79 (of which only $6,318.27 will be allowed). Thus, the total of allowed fees paid in 1987 is $144,423.22. When multiplied by the .75 negative multiplier, this figure equals $108,317.41. Multiplied by an interest factor of 1.5374, this figure increases to $166,527.18, which results in a delay enhancement of $58,209.77.

For the year 1988, plaintiff paid third party bills to various law firms of $2,700.58, and Tuttle & Taylor $145,000.00. The total of allowed fees paid in 1988 is $147,700.58. When multiplied by the .75 negative multiplier, this figure equals $110,775.43. Multiplied by an interest factor of 1.4074, this figure increases to $155,905.34, which results in a delay enhancement of $45,129.91.

For the year 1989, plaintiff paid Carpenter Bennett $1611.53, and Kohn Savett $21,713.19, which will be reduced by $2050 to reflect work performed on consolidation motions. The total of allowed fees paid in 1989 is $21,274.72. When multiplied by the

.75 negative multiplier, this figure equals $15,956.04. Multiplied by an interest factor of 1.2730, this figure increases to $20,312.38, which results in a delay enhancement of $4,355.98.

For the year 1990, plaintiff paid Lord Day $3,198.06, Carpenter Bennett $4,038.45, and Kohn Savett $60,985.00, for a total of $68,221.51. When multiplied by the .75 negative multiplier, this figure equals $51,166.13. Multiplied by an interest factor of 1.1473, this figure increases to $58,702.90, which results in a delay enhancement of $7,536.77.

Last, for the year 1991, plaintiff paid Carpenter Bennett $8,549.47, Kohn Savett $50,254.20, and third party bills of $25,000.00 for a total of $83,803.67. When multiplied by the .75 negative multiplier, this figure equals $62,852.75. Multiplied by an interest factor of 1.0450, this figure increases to $65,681.12, which results in a delay enhancement of $2,828.37.

The subtotal of delay enhancements is $216,645.39. Discounted by 5% as discussed above, this results in a total delay enhancement of $205,813.12.

## C. *Summary of Findings*

The following summarizes the Court's findings:

### FEE ADJUSTMENTS

|  |  |  |
|---|---|---|
| | $3,020,212.98 | Fees Requested |
| — | 2,003,978.00 | *Falcon Jet* Fees disallowed |
| — | 119,660.63 | Reduction in Lord Day Fees Requested to Contractual Amount |
| — | 115,173.25 | Alan Rosefielde Fees disallowed |
| — | 26,875.00 | Hein Hazenberg Fees disallowed |
| — | 200.00 | Fees disallowed for Research re: California and Ninth Circuit Law |
| — | 45,252.50 | Fees disallowed for Transfer Motions |
| — | 2,050.00 | Fees disallowed for Consolidation Motions |
| | $ 707,223.60 | Subtotal of Fees allowed |
| × | .75 | Negative Multiplier for Poor Result Obtained |
| | $ 530,417.70 | Total Fees allowed |

### EXPENSE ADJUSTMENTS

|  |  |  |
|---|---|---|
| | $1,501,846.56 | Expenses Requested |
| — | 785,713.62 | *Falcon Jet* Expenses disallowed |
| — | 5,015.05 | 10% Reduction of New York Expenses |
| — | 314,897.13 | Barber Expert Fees and Expenses disallowed |
| — | 32,155.22 | Alan Rosefielde Expenses disallowed |
| — | 2,079.82 | Hein Hazenberg Expenses disallowed |
| | $ 361,985.72 | Total Expenses allowed |

DELAY ENHANCEMENT
$  205,813.12
GRAND TOTAL OF AWARD
$1,098,216.50

------

## CONCLUSION

For the reasons stated above, an order will be entered that awards plaintiff $1,098,216.50 for fees and expenses.