995 F.2d 414
 1993-1 Trade Cases P 70,229
 GULFSTREAM III ASSOCIATES, INC., Gulfstream IV Associates, Inc.
v.
GULFSTREAM AEROSPACE CORPORATION, a Delaware Corporation;
Gulfstream Aerospace Corporation, a Georgia Corporation;
Gulfstream American Corporation; Atlantic Aviation
Corporation; Cessna Aircraft Company; Gates Learjet
Corporation; British Aerospace, Inc.; Canadair Challenger,
Inc.; Mitsubishi Aircraft International Inc.
Gulfstream III Associates, Inc., Gulfstream IV Associates,
Inc., Appellants in No. 92-5263.
Cessna Aircraft Co., Appellant in No. 92-5273.
 Nos. 92-5263, 92-5273.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 3, 1992.
Decided May 18, 1993.
 
 Harold E. Kohn, Robert J. LaRocca, Joanne Zack (argued), Deborah A. Sottosanti, Kohn, Nast & Graf, P.C., Philadelphia, PA, for Gulfstream III Associates, Inc. and Gulfstream IV Associates, Inc., appellants in No. 92-5263, appellees in No. 92-5273.
 Arthur R. Schmauder (argued), Raymond M. Tierney, Jr., Francis B. Sheehan, Sheila G. Gruber, Shanley & Fisher, P.C., Morristown, NJ, for Cessna Aircraft Co., appellant in No. 92-5273, appellee in No. 92-5263.
 Before: SLOVITER, Chief Judge, GREENBERG and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Chief Judge.
 
 
 1
 These appeals, which concern attorneys' fees, are companions to the appeals on the merits of the underlying dispute, decided today in a separate opinion. See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425 (3d Cir.1993) (hereafter Gulfstream III(I) ). Both plaintiff Gulfstream III Associates, Inc., and defendant Cessna Aircraft Company appeal the award of attorneys' fees and expenses in the amount of $1,102,904.26 to plaintiff under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1988), following a jury verdict for plaintiff on its antitrust claim. Because the facts are set forth in full in the accompanying merits opinion, we refer only briefly to those of particular relevance to the issues presented in the appeals on fees.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 This lawsuit was originally filed by Gulfstream III in June 1985 in federal court in California against seven manufacturers of business jet aircraft. It alleged that defendants had engaged in a horizontal price-fixing conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1988 & Supp. III 1991), that resulted in a 15% overcharge on two aircraft Gulfstream III had agreed to purchase from defendant Gulfstream Aerospace Corporation (GAC) (the Gulfstream Model III, Serial Number 426 (G-III) and the Gulfstream Model IV, Serial Number 29 (G-IV)).[1] Between August 1985 and February 1988, six of the seven defendants settled (the Gulfstream settlements), leaving Cessna Aircraft Company as the only remaining defendant.
 
 
 3
 A related action by plaintiff's principal, Alan Rosefielde, was filed in 1982 in the New Jersey federal court against Falcon Jet Corporation, another manufacturer of business jet aircraft, and its parent company, which alleged numerous antitrust, tort, and contract claims arising out of the purchase of nine Falcon Jet aircraft. Plaintiff thereafter filed a similar complaint in its own behalf. Included in the Falcon Jet complaints was a claim alleging that Falcon Jet participated in the horizontal price-fixing conspiracy that also affected the price of the G-III purchased by Gulfstream III and was at issue in the Gulfstream litigation. The Falcon Jet complaints were consolidated, and the Gulfstream case was transferred from California to the District of New Jersey. After the district court granted partial summary judgment for defendants, see Rosefielde v. Falcon Jet Corp., 701 F.Supp. 1053 (D.N.J.1988), and before the trial in the Gulfstream litigation, the Falcon Jet litigation was settled for $4,650,001 and dismissed.
 
 
 4
 Thereafter, Gulfstream III proceeded to trial against Cessna, the sole non-settling defendant, on its price-fixing claim arising out of the purchase of the G-III. On April 23, 1991, the jury returned a verdict in Gulfstream III's favor, finding that Cessna had conspired to fix prices of business jet aircraft and that, as a result, plaintiff was overcharged by 10% on its $9,975,000 purchase price for the G-III. The resulting $997,500 verdict would have totalled $2,992,500 after trebling.
 
 
 5
 At Cessna's request, the district court deferred entry of final judgment, and Cessna moved to dismiss the complaint nunc pro tunc or, in the alternative, to enter judgment for zero dollars by reducing the verdict by the amount of the prior settlements. On August 23, 1991, the district court entered judgment for zero dollars, agreeing with Cessna that the total amount received pretrial from the Gulfstream settlements exceeded the trebled verdict, and that therefore Gulfstream III was not entitled to recover any monetary damages from Cessna. The court, however, denied that portion of the motion seeking dismissal of the complaint nunc pro tunc and denial of Gulfstream III's right to recover attorneys' fees.[2]
 
 
 6
 On April 13, 1992, after discovery and consideration of various motions, the court entered judgment awarding Gulfstream III $1,102,904.26 in fees and expenses. Gulfstream III and Cessna both filed timely notices of appeal.
 
 
 7
 Gulfstream III's appeal challenges (1) the exclusion of fees and expenses incurred in the Falcon Jet litigation; (2) the failure to use the "lodestar" method to calculate Lord, Day & Lord's fees; (3) the 25% reduction for "limited success"; and (4) the exclusion of Alan Rosefielde's fees and expenses incurred in negotiating the Gulfstream settlements. Cessna's appeal challenges (1) Gulfstream III's right to recover any attorneys' fees or expenses in light of the zero dollar judgment; (2) the award of a delay enhancement; (3) the inclusion of the fees and expenses associated with experts retained by plaintiff who were not used at trial; and (4) the determination that Gulfstream III met its burden to establish compensable fees and expenses in several specific instances.
 
 
 8
 The function of appellate courts in reviewing attorney fee awards is "to establish the general legal principles which can then be applied by the district courts." Danny Kresky Enters. Corp. v. Magid, 716 F.2d 215, 217 (3d Cir.1983). The application of those principles in the calculation of a reasonable attorney's fee is a matter entrusted to the discretion of the district courts. Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir.1990). Of course, we have plenary review of the question whether the district court used the proper standard in calculating a fee award. Student Pub. Interest Research Group v. AT & T Bell Labs. (SPIRG), 842 F.2d 1436, 1442 & n. 3 (3d Cir.1988).
 
 II.
 DISCUSSION
 A.
 
 9
 Gulfstream III's Right to Recover Attorneys' Fees
 
 1. Proceeding to Trial
 
 10
 Before we review the amount of the fee award, we address Cessna's argument that Gulfstream III was not entitled to recover attorneys' fees under 15 U.S.C. § 15. Cessna first argues that Gulfstream III lacks standing and did not suffer an antitrust injury. Our opinion on the merits rejecting Cessna's argument is dispositive here. See Gulfstream III(I), Majority op. at 437-38.
 
 
 11
 That opinion also disposes of Cessna's second challenge to Gulfstream III's right to recover attorneys' fees, and requires only a little additional discussion. Cessna argues that if the district court had allocated to plaintiff's price fixing claims more than the $1 of the Falcon Jet settlement explicitly allocated to antitrust claims,[3] the settlement offset would have clearly exceeded plaintiff's maximum potential recovery at trial and should have precluded it from proceeding to trial.[4] Cessna's efforts to avoid trial were raised in a motion for summary judgment. We hold in the accompanying opinion that the court did not err in denying summary judgment because the record shows no motion by Cessna to produce the settlement documents to support that motion, and that, in any event, an evidentiary hearing would have been necessary, thereby precluding summary judgment. See Gulfstream III(I), Majority op. at 432-34.
 
 
 12
 At the time of the summary judgment motions, the parties were disputing whether the Falcon Jet settlement covered the same claims as the antitrust claim that Gulfstream III was taking to trial. In light of Cessna's failure to establish a clear legal right to summary judgment, the district court did not err in refusing to grant summary judgment. It follows that Cessna cannot avoid payment of attorneys' fees on the ground that plaintiff was not entitled to proceed to trial and obtain a verdict. For the same reason, the district court's denial of Cessna's Rule 59(e) motion to amend the judgment by dismissing the complaint nunc pro tunc was not error.
 
 2. Prevailing Party
 
 13
 Cessna next argues that because Gulfstream III's entire treble damages award of almost $3 million was offset by prior settlements, Gulfstream III was not a "prevailing party" entitled to recover attorneys' fees.
 
 
 14
 There is no "prevailing party" language in Section 4 of the Clayton Act. That term appears in, inter alia, 42 U.S.C. § 1988 (1988 & Supp. III 1991), the statutory fee-shifting provision that applies in civil rights cases and in comparable statutes. The Clayton Act provides instead for a mandatory award of attorneys' fees to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15; see United States Football League v. National Football League, 887 F.2d 408, 412 (2d Cir.1989) (because "[t]he term 'prevailing party' appears nowhere in section 4 of the Clayton Act[,] [a]ll that is required is an injury"), cert. denied, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).
 
 
 15
 Although the standards for calculating attorneys' fees in antitrust and civil rights cases (and other statutory fee cases) may be interchangeable, see, e.g., Daggett v. Kimmelman, 811 F.2d 793, 797 (3d Cir.1987); Danny Kresky, 716 F.2d at 217-19, the entitlement of a party to recover attorneys' fees is not necessarily identical in every context. For example, under section 1988 fee awards are discretionary but available to both plaintiffs and defendants, whereas under the Clayton Act fee awards are mandatory but available only to plaintiffs who prove an antitrust injury.[5]
 
 
 16
 An antitrust plaintiff who has proven to the satisfaction of the factfinder that defendant violated the antitrust laws and has established the fact of damage has established the prerequisites for defendant's liability and its own entitlement to attorneys' fees. In a case addressing the precise issue before us, the Fifth Circuit held that an antitrust plaintiff can recover attorneys' fees even if the verdict is entirely offset by prior settlements. See Sciambra v. Graham News, 892 F.2d 411, 414-16 (5th Cir.1990).
 
 
 17
 Although in almost all cases an award of compensatory damages will accompany an award of Section 4 attorneys' fees, the latter is not dependent upon the former. As the court in Sciambra noted, "an antitrust defendant that causes injury should not be spared liability for attorneys' fees simply because a previous settlement turns out in retrospect to preclude a compensatory damage award." Id. at 416-17. Any other holding would not only deter the private prosecution of antitrust violations, which is a critical element in the antitrust enforcement scheme and the primary reason attorneys' fees are mandatory under the statute, see id.; United States Football League, 887 F.2d at 412, but could also deter plaintiffs from early settlements with some defendants. We hold that the district court did not err in awarding Gulfstream III attorneys' fees even though the trebled verdict was entirely offset by the prior settlements, and turn next to the challenges to the amount awarded.
 
 B.
 Amount of the Attorneys' Fees
 
 18
 1. Exclusion of Falcon Jet Fees and Expenses
 
 
 19
 Included in plaintiff's petition for fees was a request for $2,003,978.00 in fees and $785,713.62 in expenses incurred in the Falcon Jet litigation. The fee request was almost twice as much as the fee requested for work in the Gulfstream litigation itself. Plaintiff claimed entitlement to Falcon Jet fees because the Falcon Jet litigation included the same liability issue as the Gulfstream litigation, and because much of the work performed in that case was helpful to and actually used in the Gulfstream case.
 
 
 20
 Cessna does not dispute that a substantial portion of the legal work performed for Gulfstream III in the Falcon Jet litigation was used by Gulfstream III in the Gulfstream litigation. That included document discovery and extensive depositions of officers and representatives not only of Falcon Jet but of the other seven jet manufacturers who were defendants in this action. Indeed, Cessna agreed to adopt into the Gulfstream litigation many of the depositions taken in the Falcon Jet litigation. Cessna concedes that it "agreed with that procedure to save time and expense." Brief for Defendant at 18. Additional depositions from the Falcon Jet litigation were adopted into the Gulfstream case over Cessna's objection by order of the district court, presumably also because they were relevant and useful. In fact, portions of eighteen depositions taken in Falcon Jet were actually introduced into evidence by Gulfstream III at the trial.
 
 
 21
 The district court categorically excluded the fees and expenses incurred in the Falcon Jet litigation because of "the absence of any judicial precedent allowing attorneys fees to be recovered for services rendered in a previous action to which the defendant was not a party." Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 789 F.Supp. 1288, 1294 (D.N.J.1992). We thus must decide whether a party entitled to fees is precluded as a matter of law from including time spent in separate litigation. The answer to that question is informed by relevant precedent.
 
 
 22
 For example, the Supreme Court, in holding that the fee award could include time spent in an administrative proceeding enforcing the consent decree, stated that the time spent pursuing an optional administrative proceeding could properly be included in the calculation of a reasonable attorneys' fee, if the work was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley I), 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986). The district court limited Delaware Valley I to cases where the "measures [were] necessary to enforce the remedy ordered by the District Court," Gulfstream III, 789 F.Supp. at 1294, the actual holding in Delaware Valley I. We find that an inadequate basis for distinction. It overlooks that in an earlier case, Webb v. County Board of Education, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), raising an analogous issue, the Court's discussion did not purport to limit compensable attorneys' fees from a separate proceeding to administrative proceedings necessary to enforce section 1983. Instead, the Court also considered on the merits whether the time spent was "reasonably expended" to advance the litigation for which fees were sought. Id. at 242, 105 S.Ct. at 1928.
 
 
 23
 Applying that standard, it is clear that if Cessna had not agreed to the use of the Falcon Jet record, or if the district court had not adopted additional portions of that record, Gulfstream III would have had to duplicate at least some of that work, and the time spent and expenses incurred would have been appropriate for inclusion in this case. We see no reasonable basis for encouraging duplicative work.
 
 
 24
 The district court also relied on Home Placement Service, Inc. v. Providence Journal Co. (Home Placement I), 739 F.2d 671 (1st Cir.1984), cert. denied, 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985), where the court refused to include time spent in a prior case in a subsequent fee award even though some of the discovery from the prior case had been used by stipulation. In so ruling, the court stated that the defendant, who had prevailed in the prior case, would not have stipulated to the use of the prior discovery had it known that it would end up paying the fees for the losing attorney in the prior case. Id. at 677.
 
 
 25
 Our recent authority is otherwise. In Keenan v. City of Philadelphia, 983 F.2d 459 (3d Cir.1992), we upheld a district court's decision to include in the calculation of a fee award in a successful section 1983 suit the hours spent in preparing, litigating, and appealing a labor arbitration hearing arising out of the same conduct. We stated that
 
 
 26
 the district judge specifically found that [t]ranscripts of arbitration testimony were used at trial and served the purpose of discovery in this case. Further, the arbitrator's decision ... was read to the jury and constituted favorable evidence for the plaintiffs at trial. The judge found that the time spent on the arbitration matter was inextricably linked to the issues before [the district court].
 
 
 27
 Id. at 474 (quotations omitted). It follows that there is no blanket legal impediment to including time spent in another litigation in a fee award, and we must remand for reconsideration by the district court.
 
 
 28
 In rejecting plaintiff's request to include time and expenses from the Falcon Jet litigation, the district court expressed legitimate concerns. The court noted, for example, that because Cessna was not a party to the Falcon Jet litigation, it had no opportunity to ensure that litigation costs were not unnecessarily escalated. Concern about unnecessary escalation is also appropriate even when there is no separate litigation at issue. In both instances, the district court has the opportunity, and the responsibility, to award fees only for work "reasonably expended." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Accordingly, we hold that if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was "inextricably linked" to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award. See Keenan, 983 F.2d at 474.
 
 
 29
 Cessna argues that the $1,282,500 allocated to attorneys' fees in the Falcon Jet settlement covered all of the fees and expenses sought in this case.[6] The district court alluded to the fee provided in the Falcon Jet settlement but made no factual finding as to the amount attributable to the price-fixing claim, and whether that amount covered all of the work reasonably necessary to that portion of the Falcon Jet record used in Gulfstream. We note that the parties to the Falcon Jet settlement explicitly contemplated that plaintiff would seek fees from Cessna.[7] That is merely one of the factors to be taken into account by the district court on remand in making the factual findings upon which its fee award will be predicated.
 
 
 30
 2. Elimination of Lord, Day & Lord Fees in Lodestar Calculation
 
 
 31
 Gulfstream III's fee petition included a request for $249,046.25 based on the hours billed by Lord, Day & Lord in the Gulfstream litigation multiplied by its normal billing rate. Under Lord, Day & Lord's original fee agreement with Gulfstream III, Gulfstream III would pay its fee monthly at one half its regular billing rates, with payment of the other half to await conclusion of the case. Lord, Day & Lord would also get 10% of any settlements or judgments awarded.
 
 
 32
 Lord, Day & Lord withdrew as lead counsel in the Gulfstream and Falcon Jet litigations in 1986 because the partners handling the cases moved to a law firm that represented one of the Falcon Jet defendants. Gulfstream III, 789 F.Supp. at 1295. Although Lord, Day & Lord had conducted extensive discovery it agreed to renegotiate its fee arrangement with Gulfstream III, and it accepted a lump sum payment of $129,385.62, substantially less than the amount Gulfstream III would have been obliged to pay under the original agreement.
 
 
 33
 In ruling on the fee petition, the district court awarded only the $129,385.62 actually paid by Gulfstream III to Lord, Day & Lord for the Gulfstream litigation, holding that Gulfstream III was not entitled to recover more in fees than it was contractually obligated to pay Lord, Day & Lord. Id. at 1295-96. On appeal, Gulfstream III argues that the district court erred by awarding fees based on the contractual fee agreement instead of calculating a lodestar based on the number of hours reasonably expended multiplied by either the prevailing market rate or the firm's normal billing rate.
 
 
 34
 The lodestar is the "initial estimate of a reasonable attorney's fee [which] is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984) (hereafter Blum ). Since the establishment of the lodestar approach as the "only reasonably objective basis for valuing an attorney's services," Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp. (Lindy I), 487 F.2d 161, 167 (3d Cir.1973), it has become the standard method for calculating fee awards. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (42 U.S.C. § 1988). It has been applied notwithstanding a different fee arrangement between the client and the attorney. See Blanchard v. Bergeron, 489 U.S. 87, 92-93, 109 S.Ct. 939, 943-44, 103 L.Ed.2d 67 (1989) (applying lodestar approach to calculate fees awarded to counsel who had a contingent fee arrangement with client); Blum, 465 U.S. at 895, 104 S.Ct. at 1547 (applying lodestar approach to calculate fees awarded to a non-profit legal organization with salaried attorneys and refusing to limit recovery to the litigation costs).
 
 
 35
 In calculating the lodestar, the Supreme Court held in Blum that the "market rate[ ] in the relevant community" is the reasonable hourly rate to use, even if that method overcompensates counsel (in that case a non-profit legal organization). Blum, 465 U.S. at 895, 104 S.Ct. at 1547. We have explained that the prevailing market rate can often be calculated based on a firm's normal billing rate because, in most cases, billing rates reflect market rates, and they provide an efficient and fair short cut for determining the market rate. SPIRG, 842 F.2d at 1445; see Lindy I, 487 F.2d at 167 ("value of an attorney's time generally is reflected in his normal billing rate"). Where the normal billing rate does not reflect the market rate, the lodestar is calculated based on the market rate. See SPIRG, 842 F.2d at 1447-48 (calculating lodestar for a for-profit public interest law firm based on a "community market rate" instead of either the actual billing rate of the firm or the market rate for public interest law firms).
 
 
 36
 The district court believed that it should use the fee negotiated between the client and the attorney in an arms-length transaction, and that a fee award based on the prevailing market rate (or the firm's normal billing rate) would create a windfall recovery. However, in SPIRG we rejected the "windfall" recovery rationale as a basis for a lower than market fee award, stating:
 
 
 37
 First, we believe that Blum requires market rates and that to a large extent Blum discounted concerns about potential windfalls. Second, we believe that the community market rule represents the best compromise among the conflicting policies behind the fee shifting statutes. Finally, and most important, the community market rule is the simplest, most workable rule (aside from the billing rate rule, which we believe contravenes the mandate of Blum).
 
 
 38
 Id. at 1448. Moreover, the risk of windfall recoveries is limited by the district court's power to reduce the fee award by excluding time as excessive, duplicative or frivolous.
 
 
 39
 Although the district court quoted the portion of the Blum opinion noting that "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult," 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11, it seems to have overlooked that notwithstanding that difficulty the Supreme Court adopted the market rate standard, and this court rejected the "windfall" recovery defense as a basis for deviation from the prevailing market rate, or the attorney's normal billing rate where that reflects the market rate, as the presumptive basis for calculation of attorneys' fees. Significantly, in Blanchard the Supreme Court rejected the argument that "[i]n no event ... should the litigant be awarded a fee greater than he is contractually bound to pay." 489 U.S. at 92, 109 S.Ct. at 943 (quotation omitted).[8]
 
 
 40
 Because the district court erred by limiting the award of fees attributable to Lord, Day & Lord to Gulfstream III's contractual obligation, we will remand to the district court for it to recalculate the fee award based on a lodestar using the reasonable hours worked multiplied by the prevailing market rate (or the firm's normal billing rate if appropriate).
 
 
 41
 The district court stated that "[t]he negotiated fee agreement is highly probative of the reasonable value of the services provided." Gulfstream III, 789 F.Supp. at 1296. It is unclear whether the court was enunciating the general principle that a negotiated fee is always probative of the reasonable fee and hence determinative, a legal principle we do not accept, or whether the district court was holding that in the circumstances of this case, Lord, Day & Lord's reasonable fee was no more than the amount negotiated. It appears reasonable to assume that because Lord, Day & Lord was required to withdraw from this case, there was duplicative work entailed by substitute counsel. Therefore, on remand, in determining the reasonable fee for Lord, Day & Lord, the district court, in exercising its discretion to exclude hours "that are excessive, redundant, or otherwise unnecessary," Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40, may eliminate hours expended on work that was subsequently duplicated by Kohn, Nast & Graf and is already included in the fee award. In sum, while we are holding that the district court should begin from a lodestar calculation, we, of course, do not preclude the trial judge's normal exercise of discretion in reducing the lodestar figure for appropriate reasons.[9]
 
 3. 25% Limited Success Reduction
 
 42
 Plaintiff challenges the district court's application of a .75 negative multiplier due to Gulfstream III's "limited success" in this litigation. Gulfstream III, 789 F.Supp. at 1298. The district court explained that it applied a 25% downward adjustment to the final fee award because plaintiff's monopolization claim was dismissed before trial; its price-fixing claims for two of the three aircraft allegedly affected by the conspiracy were dismissed before trial; and it failed to obtain any net recovery due to the settlement offsets. Id.
 
 
 43
 In Hensley, the Supreme Court held that in calculating a fee award under the Civil Rights Act, if the plaintiff achieves only partial or limited success the district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436-37, 103 S.Ct. at 1941. The trial court should consider whether the plaintiff "fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded" and whether the plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. at 434, 103 S.Ct. at 1940.
 
 
 44
 We reject Gulfstream III's suggestion that dismissal of claims before trial is not an appropriate factor to consider if the claims were related. In fact, in Hensley the Court expressly authorized reductions for limited success even if the unsuccessful claims are related claims, stating that if a plaintiff "has achieved only partial or limited success, the [award] may be an excessive amount ... even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id. at 436, 103 S.Ct. at 1941 (emphasis added). Thus, the district court here did not err in considering the dismissal of several related claims in deciding whether to apply a limited success multiplier.[10]
 
 
 45
 We find more merit to Gulfstream III's argument that the district court erred in finding limited success because Gulfstream III's net recovery was zero dollars due to the settlement offsets. In many circumstances where the plaintiff is awarded only nominal damages, its net recovery is an accurate indication of partial or limited success. See United States Football League, 887 F.2d at 413 (affirming 20% reduction for limited success because plaintiff recovered only nominal damages of $1, $3 trebled); Home Placement II, 819 F.2d at 1210 ("recovery of only nominal damages can be cause for reducing a fee award if the litigation is not otherwise significant").
 
 
 46
 In contrast, the reduction of a plaintiff's net recovery due to the offset of a jury verdict by prior settlements does not indicate that plaintiff failed to prove any of its claims at trial. It may merely reflect plaintiff's skill as a negotiator with the other defendants, and the circumstance that those negotiations occurred before, rather than after, the jury verdict. Although the district court generally has wide discretion to find "limited success," Hensley, 461 U.S. at 437, 103 S.Ct. at 1941, it would be inappropriate to consider the net recovery resulting from settlement offsets in calculating a limited success multiplier. Indeed, the district court's reduction on this ground appears inconsistent with its conclusion before trial that the settlements did not exceed the maximum possible recovery and that trial should proceed. See Sciambra, 892 F.2d at 416 ("the effect of the [co-defendant's] settlement on [plaintiff's] recovery of compensatory damages has no effect on [plaintiff's] right to recover attorneys' fees") (emphasis added).
 
 
 47
 It is unclear what portion of the reduction for "limited success" was applied because plaintiff pursued unsuccessful claims, an appropriate consideration, and what portion because the net result was zero dollars, an inappropriate factor here. On remand, the district court will have the opportunity to recalculate the limited success multiplier without considering the reduction in Gulfstream III's net recovery due to settlement offsets.[11]
 
 
 48
 4. Challenges to the District Court's Discretionary Rulings
 
 
 49
 The district court's rulings considered above were influenced by its view of the applicable law and thus we have exercised fuller review than we ordinarily apply to fee determinations made by the trial court. The remainder of the challenges asserted by the parties focus essentially on discretionary rulings made by the district court, and, after full consideration, we find no abuse of discretion. Extended discussion is not merited.
 
 
 50
 The district court's decision to deny Gulfstream III's request to recover as expenses $115,173.25 in fees and $32,155.22 in expenses paid to Plumrose, Inc. for the services provided by Alan Rosefielde, the sole shareholder of Plumrose, in negotiating the Gulfstream settlements, was based on its conclusion that settlement negotiations did not further Gulfstream III's prosecution of its claim against Cessna. Gulfstream III, 789 F.Supp. at 1300. This ruling was consistent with our decision in Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208, 1214 (3d Cir.1978), and is unassailable.
 
 
 51
 Cessna challenges the district court's award of fees and expenses for work performed in connection with experts retained but not used at trial. The court held that as long as the attorney's work with the unused experts is not "excessive, redundant or inefficient," the fees are compensable. Gulfstream III, 789 F.Supp. at 1300. Cessna never attempted to make such a showing before the district court or on appeal. Thus we will affirm the district court's award of fees and expenses incurred in connection with unused experts as within its discretion.
 
 
 52
 Cessna also argues that Gulfstream III failed to meet its burden to establish the reasonableness of the fees requested. The district court's opinion carefully explains the basis for its rejection of each of Cessna's arguments in this connection. As Cessna has raised no argument on appeal that calls into question the discretion of the district court to resolve the complicated, fact-based questions that arise in calculating the attorneys' fees in each of these difficult circumstances, we will affirm its award.
 
 
 53
 Finally, we consider Cessna's argument that the district court inappropriately awarded Gulfstream III a delay enhancement of $210,500.88, which it calculated based on the prime rate plus 1/2% interest that Gulfstream III paid on the funds it borrowed to pay its attorneys' fees and expenses. The Supreme Court has approved the practice of adjusting fee awards to account for delay. See Missouri v. Jenkins, 491 U.S. 274, 283-84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II), 483 U.S. 711, 716, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987). This is a matter within the district court's discretion. See SPIRG, 842 F.2d at 1453 ("delay constitutes an appropriate reason for enhancing the lodestar"); see also Rode, 892 F.2d at 1188; In re Fine Paper Antitrust Litig., 751 F.2d 562, 588 (3d Cir.1984).
 
 
 54
 Cessna suggests that this discretion disappears in situations where a plaintiff pays its attorneys on time, as Gulfstream III did. Although the principal justification for delay enhancements is to compensate attorneys who have had to wait for their fees, we believe this does not preclude such an award in every case where the attorneys are paid on time. The overriding purpose of a delay enhancement is to compensate for the lost use of money during the time before statutorily mandated attorneys' fees are awarded. The fact that the cost is borne by the client and not the attorney does not alleviate the hardship of waiting for attorneys' fees until the end of the litigation. Any other result would create an incentive for plaintiffs not to pay their attorneys until the conclusion of the litigation.
 
 
 55
 Plaintiffs seeking a delay enhancement bear the burden of "document[ing] the need for a [delay] multiplier." SPIRG, 842 F.2d at 1453; see also Keenan, 983 F.2d at 476 ("evidence should document the costs of receiving delayed payment of fees"). Gulfstream III borrowed money to pay its attorneys throughout the litigation and thus it bore the costs of the delay in receiving the award of attorneys' fees. Cf. Blum v. Witco Chem. Corp., 888 F.2d 975, 984-85 (3d Cir.1989) (plaintiff's counsel certified that the delay in payment was significant and that it borrowed money to cover the shortfall). In addition, Gulfstream III produced evidence that it paid interest on the loans equal to the market interest rates during the time period of the litigation plus 1/2%. Accordingly, we find no abuse of discretion in the district court's award of a delay enhancement or its calculation based on the market interest rate plus 1/2%.[12]
 
 III.
 CONCLUSION
 
 56
 We have approved all portions of the district court's order on fees except its categorical exclusion of the fees and expenses incurred in the Falcon Jet litigation, its calculation of the Lord, Day & Lord fees based on Gulfstream III's contractual obligation, and its calculation of a limited success multiplier based on the complete offset of the trebled verdict by prior settlements. We will thus vacate its order and remand so that the district court can reconsider these issues in light of this opinion.[13]
 
 
 
 [1]
 The initial complaint also included a claim by a related plaintiff, Gulfstream IV Associates, Inc., against GAC based on its agreement to purchase the Gulfstream Model III, Serial Number 413, but this claim was disposed of by summary judgment for Cessna before trial, and that order was not appealed. The claim of Gulfstream III based on the purchase of the G-IV aircraft was dismissed on summary judgment for Cessna, a judgment we affirm in the companion opinion. See Gulfstream III(I), Majority op. at 350
 
 
 [2]
 In the separate opinion filed today we affirm the district court's order. See Gulfstream III(I), Majority op. at 437
 
 
 [3]
 In denying Cessna's Rule 59(e) motion to amend the judgment, the district court explained its decision not to reallocate the Falcon Jet settlement pretrial as follows:
 There is no clearcut basis on which to allocate any specific portion of the Falcon Jet settlement proceeds to the judgment in this case, just as there was no clearcut way to allocate the non-Falcon Jet proceeds to that judgment. What is clear is that Cessna had no absolute legal entitlement to a setoff of settlement proceeds in both this case and the Falcon Jet case sufficient to have merited dismissal of the complaint in this case before trial.
 App. at 95.
 
 
 [4]
 Subsumed in this argument is Cessna's belief that had the Falcon Jet settlement been allocated differently than specified by the parties to that settlement, plaintiff could not have proceeded to trial merely to establish liability and its consequent right to recover attorneys' fees. The majority in Gulfstream III(I) does not address that point; Judge Greenberg, in his separate opinion, expresses the view that, in any event, Gulfstream III was entitled to go to trial to establish liability as a predicate to a fee award
 
 
 [5]
 Contrary to Cessna's argument, even under the "prevailing party" notion, a civil rights plaintiff who recovers only nominal damages is considered a "prevailing party" under section 1988 as long as it obtains "some relief on the merits," although the technical nature of the damage award bears on the fee issue. Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Courts have consistently held that an antitrust plaintiff who receives a favorable verdict, even if that verdict awards only nominal damages, is still entitled to seek attorneys' fees. See United States Football League, 887 F.2d at 411-12 (awarding fees after jury awarded $1 in nominal damages); Home Placement Serv., Inc. v. Providence Journal Co. (Home Placement II), 819 F.2d 1199, 1210 (1st Cir.1987) (rejecting argument that recovery of only nominal damages is a basis for denying a fee award in its entirety)
 
 
 [6]
 A declaration filed by a partner at Lord, Day & Lord, Gulfstream III's first lead counsel in the Falcon Jet litigation, asserted that 80% of the firm's fees had been expended on the antitrust price-fixing claim. S.App. at 229. Plaintiff's fee request in this case reflected a deduction in that amount as having been previously compensated
 
 
 [7]
 The Falcon Jet settlement provides in relevant part:
 
 
 [1]
 The Falcon Jet interests agree to pay ... to Rose Associates Inc., of Miami, the sum of one million two hundred and eighty-two thousand five hundred dollars ($1,282,500), for reimbursement of legal fees
 
 
 [2]
 Plaintiffs specifically reserve their rights against all third parties (other than the persons released herein), specifically including Cessna Aircraft
 App. at 896, 900.
 
 
 [8]
 We do not decide who would be entitled to any fee the district court might award that exceeds Gulfstream's contractual liability to its counsel. The district court assumed that Gulfstream III would retain that amount. The record suggests that Rosefielde and Michael Chapnick, the partner at Lord, Day & Lord responsible for billing to the Gulfstream and Falcon Jet litigations, discussed the possibility that in the event of an additional award, Lord, Day & Lord would get additional fees. See S.App. at 616-18, 711-12. Judge Seitz desires to emphasize his view that the statute authorizing attorneys' fees in antitrust matters does not permit a district court to allow fees, either in whole or in part, that will not be ultimately payable to counsel, rather than the party plaintiff
 
 
 [9]
 The same principles would apply to calculation of Lord, Day & Lord's fees in the Falcon Jet matter should the district court, on remand, hold that some of those fees were for work reasonably necessary in the Gulfstream litigation and not fully compensated by the settlement
 In light of our conclusion, we need not address Gulfstream III's argument tht the court's deduction from the Lord, Day & Lord fees of $45,452.50 for unnecessary work amounted to a double deduction.
 
 
 [10]
 Cessna adequately preserved its objection to the fee award on the dismissed claims by arguing that plaintiff achieved a "poor result." See Gulfstream III, 789 F.Supp. at 1297; see also Bell v. United Princeton Properties, Inc., 884 F.2d 713, 721 (3d Cir.1989) (to challenge the reasonableness of fees, the adverse party "need only specify with particularity the reason for its challenge and the category (or categories) of work being challenged; it need not point to each individual excessive entry")
 
 
 [11]
 We express no opinion whether Gulfstream III's recovery of only a 10% overcharge instead of the 15% alleged in the complaint is relevant evidence of partial or limited success
 
 
 [12]
 Cessna suggests that the district court abused its discretion by relying on the market interest rate in calculating the award. This argument is meritless in light of our explicit recognition that the market interest rate is an appropriate factor to consider in calculating a delay enhancement. See Blum v. Witco, 888 F.2d at 984
 
 
 [13]
 We urge the parties to resolve the remaining fee issues on their own so that the district court can spend its time on more productive endeavors