David C. CLARK, Plaintiff,

v.

The BOARD OF EDUCATION OF the
TOWNSHIP OF NEPTUNE, et
al., Defendants.

Civ. A. No. 94–1173 (AET).

United States District Court,
D. New Jersey.

Nov. 9, 1995.

Steven R. Cohen, Michael Damm, Selikoff
& Cohen, P.A., Mount Laurel, NJ, for Plain-
tiff, David C. Clark.

James T. Hundley, Hundley, Parry & Hop-
kins, Ocean Grove, NJ, for Defendant, Nep-
tune Township Board of Education.

## MEMORANDUM

WOLFSON, United States Magistrate
Judge.

Presently before the Court is the motion
by plaintiff, pursuant to 42 U.S.C. § 1988,
seeking attorneys' fees for legal services pro-
vided both in defending plaintiff in a state
administrative tenure proceeding and in
prosecuting plaintiff's § 1983 case. The par-
ties consented to the jurisdiction of this
Court pursuant to 28 U.S.C. § 636. Follow-
ing briefing and oral argument on July 26,
1995, the Court directed plaintiff's counsel to
adjust the attorney's fees sought and resub-
mit their request for fees accordingly. Sub-
sequently, the Court received moving, oppo-
sition, and reply papers. This matter is be-
ing considered pursuant to *Fed.R.Civ.P.* 78.
For the following reasons, plaintiff is award-

ed $69,346.11 in fees [1] and $2,219.74 in costs,[2] totalling $71,565.85, to be paid by defendant, the Neptune Township Board of Education ("Board").

### Background

Plaintiff is a high school teacher employed by the Board. Plaintiff filed this § 1983 action against the Board, Robert McEwan, Harry Smith, Gilmon Brooks, Joanne Collins, Michael Fornino, Dominic Loperfido, Frances Taylor, Gail Taylor, and Maureen Weber, all of whom are voting members of the Board, as well as against Michael T. Lake, Superintendent of Schools for the Neptune Township Public School System. His complaint alleged that defendants had violated his first and fourteenth amendment rights guaranteed by the United States Constitution.

The allegations in the complaint arose out of the Board's termination of plaintiff based upon his statements, made on January 30, 1992, during a radio talk show. During this radio talk show, plaintiff discussed, among other things, his disapproval of the high school's curriculum which required the teaching of African literature in his American Literature class during "Black History Month." *Plaintiff's Complaint* at ¶ 7.

On January 31, 1992, defendants suspended plaintiff from teaching, and further denied plaintiff salary increments. On February 20, 1992, the Board initiated a state administrative tenure proceeding to terminate plaintiff's employment by filing charges, pursuant to the New Jersey Tenure Employees' Hearing Law, N.J.S.A. § 18A:6–10, *et seq.*, with the New Jersey Commissioner of Education.[3] *Plaintiff's Complaint* at ¶¶ 15–16. The charges against plaintiff were that he had engaged in conduct unbecoming a teacher. Plaintiff's counsel represented plaintiff during the tenure proceedings, and challenged

the Board's denial of plaintiff's salary increments. *Certification of Steven R. Cohen* at ¶ 4. During the tenure proceedings, plaintiff defended on the grounds that defendants had violated his first amendment rights by instituting the tenure proceedings against him. Plaintiff further claimed that his due process rights had been violated because the Commissioner of Education, the official to whom appeals from the administrative law judge's decision would be taken, was biased in favor of defendants. This contention was based upon a letter issued by the Commissioner which plaintiff claimed contained *ex parte* information supplied by defendants. *Certification of Steven R. Cohen*, at p. 4, n. 1; p. 5, n. 2; *see also Reply Certification of Steven R. Cohen* at ¶ 3. On March 8, 1994, plaintiff filed the complaint in this action.

On May 23, 1994, the administrative law judge who presided over the tenure proceedings granted plaintiff's motion to dismiss the tenure charges, finding that defendants had violated plaintiff's first amendment rights. The administrative law judge ordered the reinstatement of plaintiff, and awarded back pay and the withheld salary increments. *Certification of Steven R. Cohen* at ¶ 6.

Two appeals ensued. On June 14, 1994, the Board filed exceptions to the administrative law judge's decision with the Commissioner of Education.[4] On August 23, 1994, the Commissioner rejected the Board's contentions, and adopted the decision of the administrative law judge. *Certification of Steven R. Cohen* at ¶ 7. The Board then appealed the decision of the Commissioner to the New Jersey State Board of Education, and on January 4, 1995, the State Board affirmed the decisions of the administrative law judge and of the Commissioner. *Certification of Steven R. Cohen* at ¶ 8.

---

1. This amount includes the Court's award of $2,444.46 in fees for the work performed on the fee application. *See also* Appendix B to this Memorandum. [Editor's Note: Appendix deleted for purposes of publication.]

2. *See* Appendix C to this Memorandum. [Editor's Note: Appendix deleted for purposes of publication.]

3. The New Jersey Administrative Procedure Act, N.J.S.A. 52:14B–1, *et seq.*, provides for three levels of consideration in education matters: the Office of Administrative Law, the Commissioner of Education, and the State Board of Education.

4. On August 12, 1994, the Court placed this matter on the inactive list pending the disposition of the tenure proceedings.

On January 20, 1995, the parties entered into a settlement agreement under which plaintiff agreed to dismiss his complaint in this action and the Board agreed to pay plaintiff $43,000 in compensatory damages and $16,518 in back pay. The parties further agreed that plaintiff would submit a claim for attorney's fees pursuant to 42 U.S.C. § 1988. *Certification of Steven R. Cohen* at ¶ 10.

On April 12, 1995, plaintiff moved for attorney's fees and costs incurred in connection with both the filing of the § 1983 complaint and the defense of plaintiff in the tenure proceedings, seeking a total of $106,402.38.[5] *See Plaintiff's April 12, 1995 Letter Brief.* The Board opposed, contending that plaintiff was only entitled to fees in the amount of $13,192.01. The Board did not contest the reasonableness of plaintiff's counsel's hourly rates,[6] and further, acknowledged that plaintiff was entitled to recover some of the fees requested inasmuch as plaintiff was the prevailing party under the settlement. The Board, however, argued that plaintiff was not entitled under § 1988 to fees for legal services rendered in connection with the state administrative tenure proceedings. In support of its claim, the Board maintained that the state proceedings had been "optional," and as such, the burden was upon plaintiff to demonstrate that the services rendered in connection with these proceedings were "useful and of a type ordinarily necessary" to advance plaintiff's § 1983 suit, as required by the Supreme Court's decision in *Webb v. Dyer County Board of Educ.*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). The Board contended that plaintiff had failed to meet this burden. *Defendant's May 15, 1995 Letter Brief* at 2. In reply, plaintiff asserted that the proceedings had not been optional, or, alternatively, that the work performed had been both useful and ordinarily necessary to further plaintiff's civil rights litigation. *Plaintiff's May 30, 1995 Letter Brief.*

On July 26, 1995, the Court heard oral arguments on plaintiff's motion. The Court ruled that plaintiff was not entitled to the fees attributable to plaintiff's tenure proceeding defense which challenged the Commissioner's partiality because this defense was unrelated to plaintiff's civil rights litigation. In addition, the Court informed the parties that a discrete portion of the legal services rendered in the tenure proceedings would be allowed pursuant to *Webb*. Indeed, the parties and the Court had recognized the nexus between the administrative proceedings and this civil rights litigation by agreeing to stay this federal case until the administrative matter was concluded. The parties were prescient, since the conclusion of the administrative matter did result in a speedy settlement of this case. That connection, did not, however, transform the entire proceeding into a compensable event for attorney's fees under § 1988. Thus, the Court instructed plaintiff's counsel to adjust the total amount of attorney's fees accordingly. The Court further instructed plaintiff's counsel to substantiate their fee application by explaining how the services for which plaintiff's counsel sought fees had, in fact, advanced plaintiff's civil rights litigation. As guidance, the Court directed the parties' attention to *Stacy v. Stroud*, 845 F.Supp. 1135, 1143 (S.D.W.Va. 1993), in which the court held that fees incurred in defending a driving-under-the-influence charge were compensable under § 1988. This Court favorably noted that the

---

5. According to plaintiff's counsel's billing statement dated April 10, 1995, the amount of fees, exclusive of the fee for the fee application, was $110,916.55. *See Plaintiff's April 12, 1995 Letter Brief*, Exhibit 1 at 34. On April 11, 1995, plaintiff's counsel modified their April 10, 1995 billing statement, deducting $15,037.60 in their billing discretion, thus leaving a balance of 95,878.95. *See supra*, Exhibit 2 at 10. To this plaintiff's counsel added $4,607.55 for costs and disbursements, *see supra*, Exhibit 1 at 34, and $5,915.88 for their work on the fee application. *See supra*, Exhibit 3 at 3. Hence, the total amount requested was $106,402.38. *Certification of Steven R. Cohen* at ¶ 20.

6. Plaintiff's counsel's hourly rates are as follows:

| Attorney | Hourly Rate |
|---|---|
| Joel S. Selikoff | $210.00 |
| Steven R. Cohen | $210.00 |
| Kenneth A. Sandler | $160.00 |
| Michael C. Damm | $175.00 |
| Joan E. Peculski | $75.00 |
| Kelly C. Cervo | $75.00 |
| Timothy J. Kennedy | $75.00 |
| Carol H. Sapakie | $175.00 |

See Plaintiff's April 12, 1995 Letter Brief, Exhibit 1 at 33.

*Stacy* decision expressly took into consideration the attorney's selectivity in requesting fees for the work performed. *Id.*

On August 4, 1995, plaintiff's counsel submitted a copy of the adjustments made to the attorney's fees in accordance with the Court's July 26, 1995 directive. The adjustments, which related only to plaintiff's partiality defense in the tenure proceedings, totalled $11,024.65. *See Plaintiff's September 12, 1995 Letter Brief.* By letter brief dated September 8, 1995, the Board opposed a number of the fees sought. It argued that plaintiff had again failed to establish that the services rendered in the tenure proceedings were useful and necessary to plaintiff's civil rights litigation. It further maintained that plaintiff had included as adjustments a number of deductions which plaintiff had previously subtracted in its billing discretion, and that these adjustments were therefore duplicative. In a reply letter dated September 12, 1995, plaintiff argued that the services to which defendant pointed were indeed relevant to the civil rights litigation, and that defendant's claim regarding plaintiff's duplicative adjustments was without merit.

Thus, plaintiff now seeks a total of $96,-795.23 in attorney's fees.[7] Because defendant does not contest the hourly rates suggested by plaintiff, or the number of hours which plaintiff claims were expended in filing his civil rights complaint, *see Defendant's May 15, 1995 Letter Brief* at 7, the Court will address only defendant's specific objections, as set forth in its September 8, 1995 letter brief, to plaintiff's requests for fees relating to work performed during the tenure proceedings.

### Discussion

 The question presented is whether plaintiff's counsel are entitled, pursuant to 42 U.S.C. § 1988(b), to attorney's fees for legal services rendered in connection with the state administrative tenure proceedings instituted against plaintiff by the Board. Section 1988(b) provides:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Thus, § 1988 allows a court to award attorney's fees only for services rendered during "proceedings to enforce" a limited number of federal statutes. *Barrow v. Falck,* 977 F.2d 1100, 1104 (7th Cir.1992). "The time that is compensable under § 1988 is that 'reasonably expended *on the litigation.'* " *Webb v. Board of Educ. of Dyer Co.,* 471 U.S. 234, 242, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)) (emphasis in original). It is incumbent upon the prevailing party to submit a request for legal fees which permits the court to determine which fees were incurred in pursuing the federal litigation. *Webb,* 471 U.S. at 242, 105 S.Ct. at 1928; *Loranger v. Stierheim,* 10 F.3d 776, 782 (11th Cir.1994).

In its *Webb* decision, the Supreme Court enunciated a further limitation on the recovery of attorney's fees under § 1988. In *Webb,* the Court held that the district court had acted well within the bounds of its discretion in denying a request for fees under § 1988 for time expended pursuing optional administrative remedies prior to the institution of the § 1983 suit. *Webb,* 471 U.S. at 244, 105 S.Ct. at 1929. In so holding, the Court explained that a § 1983 plaintiff is generally not entitled to claim attorney's fees for services rendered during administrative proceedings because such proceedings are not "any part of the proceedings to enforce § 1983." *Id.* at 241, 105 S.Ct. at 1927. This

---

7. This total was arrived at as follows:

| | | |
|---|---|---|
| Original fee statement | | $115,524.10 |
| Billing Reduction | | $ 15,037.60 |
| Adjustments per this Court's directive | | $ 11,024.65 |
| Adjusted Fees | | $ 89,461.85 |
| Fees for Fee Application | | $ 7,333.38 |
| Total Fees | | $ 96,795.23 |

result obtains because a § 1983 plaintiff is not required to exhaust administrative remedies prior to bringing a § 1983 suit. *Id.*

■ The Court, however, carved out an exception where the plaintiff establishes that a "discrete portion of the work product from the administrative proceeding was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before the settlement." *Id.* at 243, 105 S.Ct. at 1928–29; *see also North Carolina Dep't of Transp. v. Crest Street Community Council, Inc.*, 479 U.S. 6, 15, 107 S.Ct. 336, 341–42, 93 L.Ed.2d 188 (1986). The Third Circuit, in *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414 (3d Cir.1993), elaborated upon the showing that a party must make to be entitled to an award of attorney's fees for services rendered during a separate, but related, litigation. The court held that "if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, [and] that the time spent on the other litigation was 'inextricably linked' to the issues raised in the present litigation, ..., then the district court may include those fees and expenses in its fee award." *Gulfstream*, 995 F.2d at 420 (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 474 (3d Cir.1992) (upholding fee award's inclusion of hours spent in litigating and in appealing a labor arbitration hearing which was related to § 1983 suit)). In sum, compensation for attorney's fees under § 1988 for work performed in support of an optional administrative proceeding which precedes the filing of a § 1983 suit is the exception and not the rule. The burden is upon the prevailing party to establish that the services for which it seeks fees actually advanced the civil rights litigation.

In this case, plaintiff's counsel argue, in the most conclusory of terms, that every task which they performed while defending plaintiff during the administrative proceeding and the subsequent appeals was necessary to plaintiff's civil right litigation, and thus, is compensable. They essentially contend that, but for their work during the tenure proceeding, there would not have been a settlement of this § 1983 suit. *Plaintiff's September 12, 1995 Reply Letter Brief* at 5.

■ This Court, however, previously considered this contention at oral argument. And, in response to the very same argument, the Court expressly instructed counsel to resubmit their request for fees, admonishing them that only a "discrete" portion of the services rendered during the administrative proceedings would be compensable under *Webb*. The Court further reminded counsel that, to be entitled to attorney's fees under § 1988, it was incumbent upon them to establish a link between the services rendered during the tenure proceedings and plaintiff's § 1983 suit. The Court finds that plaintiff's counsel have failed to meet this burden. Plaintiff's counsel's billing statement suffers from two fundamental flaws. First, the billing statement is over-inclusive, embracing all services which counsel performed prior to the filing of the civil rights complaint, except for those services relating to plaintiff's bias defense:

Second, the billing statement, in many instances, inadequately describes the nature of the services performed, and the amount of time spent performing each of the services. For example, plaintiff seeks compensation for the following services performed on February 12, 1992:

SRC Intra-office conferences with JSS and KS Review text of statement on radio show Telephone call from Association President and client Telephone call from Brian Cige, Esq.

2.75 hours $577.50

*Plaintiff's April 12, 1995 Letter Brief,* Exhibit 1 at 1.

While counsel's review of plaintiff's statement on the radio show was certainly relevant to plaintiff's § 1983 suit, plaintiff's counsel have failed to set forth the amount of time spent reviewing the statement. Instead, they have lumped it together with other services, providing a total amount of hours for all services performed on that particular day by that attorney. It would be not only impossible, but inappropriate, for this Court to attempt to estimate the amount of time spent reviewing this statement, or the

time spent on any of other services listed in the entry.

In addition, the entries regarding the intra-office conference and telephone calls fail to describe what was discussed. In accordance with *Webb*, the Court is unwilling to assume that every single phone call and every conference was inextricably linked to plaintiff's civil rights litigation. Hence, the Court rules that the fees sought for services performed on February 12, 1992, are non-compensable.[8] *See Loranger*, 10 F.3d at 782 (district court properly denied request for compensation for time expended independent of the federal litigation where "timesheets, in some instances, group[ed] together ... claimed legal services, thereby making it difficult to determine the exact number of hours undertaken, vis-a-vis other (non-allowable) discrete proceedings...."); *Finkelstein v. Bergna*, 804 F.Supp. 1235, 1260 (N.D.Cal. 1992) (where it was impossible to determine what percentage of work performed was compensable under *Webb*, attorney's fees properly denied).

Plaintiff's counsel, however, contend that they should be compensated for the services enumerated in this entry because "[t]he time spent for all of these services ... was necessary and did advance the civil rights litigation." *Plaintiff's September 12, 1995 Letter Brief* at 2. This explanation, however, is conclusory; it fails to provide a "nexus between the work in the disciplinary proceeding for which fees were requested and the demands of the district court action...." *Cullen v. Fliegner*, 18 F.3d 96, 106 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994).

Plaintiff's counsel rely heavily upon *Cullen* in support of their contentions, but that reliance is misplaced. In *Cullen*, the Second Circuit held that the lower court had properly awarded fees incurred during a disciplinary proceeding where counsel had sought only a "'discrete portion' of the fees so incurred." *Id.* (citation omitted). Here, plaintiff's counsel seek fees for all of the services rendered during the tenure proceedings. The only adjustments which plaintiff's counsel made to the fees sought were to those fees relating to plaintiff's defense challenging the partiality of the Commissioner. Those adjustments were not enough. Unlike in *Cullen*, the services for which plaintiff's counsel seek fees are anything but "discrete" portions of the work performed; rather, counsel seek fees for the entirety of the services rendered by them prior to the filing of plaintiff's civil rights complaint.

Many of plaintiff's counsel's entries suffer from the same deficiencies as the ones discussed above with respect to the February 12, 1992 entry. Accordingly, the Court finds that the fees listed on Appendix A to this opinion are non-compensable under § 1988.* The Court takes into consideration both those fees reduced or eliminated by counsel on April 11, 1995, in their billing discretion, and those fees reduced or eliminated by counsel on July 26, 1995, in accordance with this Court's directive. The fees listed on Appendix A include both those to which defendant objected, and those which the Court, consistent with the above analysis, finds non-compensable. Because defendant has failed to object to fees charged for services performed after March, 1994, the Court will allow them. The Court finds that the fees listed on Appendix B, in the amount of $66,901.65, are compensable.* The Court further awards $2444.46 in fees for the work performed on the fee application,[9] and

---

8. The Court notes that, in some instances, but not many, plaintiff's counsel have provided an adequate description of the services performed, permitting the Court to determine whether these services were sufficiently related to plaintiff's § 1983 suit. For example, the entry for August 31, 1992 states:

> KAS Intra-office conference regarding 2nd Circuit decision upholding 1st amendment rights of faculty member

This entry is adequately detailed to allow a finding that the legal services performed had some relationship to plaintiff's civil rights litigation.

* Editor's Note: Appendixes deleted for purposes of publication.

9. Since the fee application involved substantial efforts to recover fees that are not compensable and contrary to the Court's directive, the Court finds that the fees sought in connection with the preparation of the fee application are excessive. Accordingly, the Court has reduced the fees sought by two-thirds to reflect the time that the

$2,219.74 in costs, as set forth in Appendix C.* The Court notes that defendant's remaining argument regarding plaintiff's counsel's duplication of adjustments is without merit.

For the foregoing reasons, plaintiff's motion for attorney's fees pursuant to § 1988 is allowed in the amount of $71,565.85. An appropriate Order shall follow.

## ORDER

This matter having been opened to the Court by Steven R. Cohen, Esq., of Selikoff & Cohen, counsel for plaintiff, David C. Clark, seeking attorney's fees and costs pursuant to 42 U.S.C. § 1988, and the Court having considered the moving papers, and the opposition thereto, and having set forth its reasoning in a Memorandum entered upon this date, this matter having been considered pursuant to *Fed.R.Civ.P.* 78, and for *good cause shown,*

IT IS on this 9th day of November, 1995,

ORDERED that plaintiff's motion for attorney's fees is granted in the amount of $69,346.11 and costs in the amount of $2,219.74.

Court believes was necessary to make the appropriate application.